21-2934-pr
*Krivoi v. Chappius*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of December, two thousand twenty-two.

Present:

> GUIDO CALABRESI,
> GERARD E. LYNCH,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

---

MARAT KRIVOI,

> *Petitioner-Appellant*,

v.                                                                      21-2934-pr

PAUL W. CHAPPIUS, JR., Superintendent,
Elmira Correctional Facility

> *Respondent-Appellee*.

---

| | |
|---|---|
| For Petitioner-Appellant: | RICHARD M. LANGONE, Langone & Associates, PLLC, Garden City, NY |
| For Respondent-Appellee: | MORGAN J. DENNEHY (Leonard Joblove, *on the brief*), Assistant District Attorneys, *for* Eric Gonzalez, District Attorney Kings County, Brooklyn, NY |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Gary R. Brown, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Petitioner-Appellant Marat Krivoi appeals from a judgment of the United States District Court for the Eastern District of New York (Gary R. Brown, *Judge*) entered November 22, 2021, denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. On August 10, 2007, a jury convened by the New York Supreme Court, Kings County, convicted Krivoi of two counts of Murder in the Second Degree under N.Y. Penal Law § 125.25[1]. Krivoi unsuccessfully sought a writ of habeas corpus in the district court, which granted a certificate of appealability, *see* 28 U.S.C. § 2253(c)(2), as to three of his arguments: (1) that the prosecution deprived him of his right to due process by violating the rule laid out in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny; (2) that the state trial court deprived him of his Sixth Amendment right to confront witnesses against him in violation of the rule laid out in *Bruton v. United States*, 391 U.S. 123 (1968); and (3) that the combination of these errors denied him due process. The Court assumes the parties' familiarity with the case.

A district court's denial of a § 2254 petition is reviewed *de novo*. *Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010). When a state court adjudicates a habeas petitioner's claim on the merits, as it did as to Krivoi's first and second claims, a district court may grant relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)–(2). These standards are "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102

2

(2011), and courts should "not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (cleaned up).

Under the "clearly established Federal law" clause, § 2254(d)(1), a state court adjudication is "contrary to" Supreme Court precedent if it "contradicts the governing [Supreme Court] law" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). As relevant here, an unreasonable application of federal law occurs when a "state court identifies the correct governing legal principle . . . but unreasonably applies it to the facts of [a petitioner's] case." *Id.* at 407. If there are no Supreme Court holdings that squarely address a petitioner's claim, "it cannot be said that the state court unreasonably applied clearly established Federal law." *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (cleaned up).

Krivoi first argues that the state violated the rule laid out in *Brady*. This claim is predicated on the prosecution's alleged failure to turn over impeachment evidence in the form of statements made to investigators by Krivoi's ex-wife, Alesya Nayfeld, that she had never seen a particular tennis bag containing firearms and ammunition (including the weapons used in each murder). This statement would have contradicted a portion of the testimony given by the prosecution's primary cooperating witness, Pyotr Sarkisov, who testified that he picked up the bag of weapons from Nayfeld at Krivoi's instruction years after the commission of the charged murders.

A *Brady* claim is shown by establishing that: (1) the information in question is favorable to the defendant, either for being exculpatory or impeaching; (2) that information was suppressed by the prosecution, willfully or inadvertently; and (3) the defendant suffered prejudice because the suppressed information was material. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *Banks v.*

3

*Dretke*, 540 U.S. 668, 691 (2004).  The parties do not dispute that the evidence was favorable to Krivoi—Nayfeld's statements contradicted a portion of Sarkisov's testimony regarding the custody of weapons, thus impeaching him on that issue.  In post-conviction proceedings in state court, the New York Supreme Court found that Nayfeld's statements were neither suppressed nor material, and the Appellate Division summarily affirmed, reaching only the issue of materiality.[1] *See People v. Krivoy,* 22 N.Y.S.3d 889, 889 (2d Dep't 2016) (holding, without addressing suppression, that "there was no reasonable possibility that such nondisclosure affected the outcome of the trial").

The state court's conclusion that Nayfeld's statements would not have affected the outcome at trial was a reasonable application of federal law.  A failure to disclose exculpatory evidence does not violate due process unless the evidence is material, which is to say that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).  "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.  A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'"  *Kyles v. Whitley,* 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678).  The government's case against Krivoi involved extensive evidence, nearly all of which is unaffected by Nayfeld's statement.  This evidence included: testimony from multiple eyewitnesses, expert

[1] Because we conclude that the state court's materiality determination was not an unreasonable application of law, we need not decide whether Nayfeld's statements were "suppressed" within the meaning of the *Brady* rule. And it is undisputed that Nayfeld's statements were potentially exculpatory information.  At oral argument, counsel for respondent candidly acknowledged that the prosecutor should have disclosed Nayfeld's statements.

4

testimony, physical evidence, ballistics evidence, and Krivoi's own recorded inculpatory statements. Against this mountain of evidence, Nayfeld's statement would have served to impeach Sarkisov only on the issue of post-murder custody of the weapons. What is more, Sarkisov was already heavily attacked by the defense as both a convicted criminal and a cooperating witness, and "where ample ammunition exists to attack a witness's credibility, evidence that would provide an additional basis for doing so is ordinarily deemed cumulative and hence immaterial." *United States v. Orena*, 145 F.3d 551, 559 (2d Cir. 1998). Finally, we note that Nayfeld's credibility would itself have been subject to attack based on her relationship with Krivoi and her own risk of criminal liability had she admitted delivering the murder weapons to Sarkisov at her then-husband's behest. In sum, the state court's determination that Nayfeld's statement was immaterial was not an unreasonable application of federal law because there is no reasonable probability that the outcome of the trial would have been different if Krivoi had been supplied with Nayfeld's statement. *Cf. Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 124 (2d Cir. 2015) (finding impeachment evidence material under *Brady* where defendant was convicted based on the testimony of only one witness and the state presented no forensic or eyewitness testimony).

Krivoi next argues that his Sixth Amendment rights were violated when the trial court erroneously admitted a statement of his non-testifying codefendant into evidence in violation of *Bruton*. Specifically, the trial court admitted into evidence a statement made by Krivoi's codefendant while in police custody that the codefendant and his "friends" were present for the burning of a car with a victim's body in it.[2] On direct appeal the Appellate Division held that the trial court "erroneously admitted into evidence the redacted statements made by the codefendant,"

---

[2] The word "friends" reflects the redaction applied to the statement by the trial court.

but that even with this evidence, there was "no reasonable possibility that the error might have contributed to the defendant's conviction." *People v. Krivoi*, 917 N.Y.S.2d 273, 273 (2d Dep't 2011).

We review a state-court merits determination of harmless error under a two-part standard. The first of these tests was laid out by the Supreme Court in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Under *Brecht,* when a state court has found a constitutional violation to be harmless beyond a reasonable doubt (by applying the harmless error standard from *Chapman v. California*, 386 U.S. 18 (1967)), a habeas petitioner must show that an error had a "substantial and injurious" effect or influence on the jury's verdict. *Brecht*, 507 U.S. at 622–23 (internal quotation marks omitted). The Supreme Court recently held that, in addition to the *Brecht* standard, federal courts must apply the AEDPA standard laid out in § 2254(d)(1). *Brown v. Davenport*, 142 S. Ct. 1510, 1520 (2022). In other words, Krivoi must prevail under the *Brecht* "substantial and injurious" standard, *and* he must show that the state court's harmless error determination was an unreasonable application of federal law as determined by the Supreme Court (i.e., that the state court's harmless error determination was an unreasonable application of *Chapman*).

Krivoi's arguments do not suffice under the *Brecht* standard, and therefore even without reaching the AEDPA standard, his *Bruton* claim fails.[3] "In assessing whether the erroneous admission of evidence had a substantial and injurious effect on the jury's decision, [this Court] consider[s] the importance of the wrongly admitted evidence, and the overall strength of the prosecution's case. The importance of wrongly admitted evidence is determined by the

[3] Krivoi submitted his brief before the Supreme Court issued its opinion in *Brown*, 142 S. Ct. at 1520, and therefore he understandably focused on only the *Brecht* standard. Even if there is any daylight between the two standards such that petitioners might have briefed each separately, Krivoi cannot prevail under *Brecht*, and thus the AEDPA standard is of no relevance here.

6

prosecutor's conduct with respect to the evidence, whether the evidence bore on an issue plainly critical to the jury's decision, and whether it was material to the establishment of the critical fact, or whether it was instead corroborated and cumulative." *Wood v. Ercole*, 644 F.3d 83, 94 (2d Cir. 2011) (cleaned up). Here, the wrongly admitted evidence was of very limited importance, and the prosecution's case was strong even without it. As to the former point, the wrongly admitted statement related to only one of the two murders, did not identify Krivoi by name, and, at most, placed him at the scene of the post-murder burning of the car. The relative unimportance of this statement is underscored by the prosecution's closing, which made only two passing references to it during the course of a presentation that detailed other evidence for over 100 pages of transcript. As to the strength of the prosecution's case without the statement, for the reasons stated above, the prosecution's case at trial was extremely thorough and well-supported even without the wrongly admitted statement.

Finally, Krivoi contends that the *Bruton* violation interacted with the alleged *Brady* violation to deny him due process. Having reviewed the record, we conclude, in light of the totality of the evidence, that his argument is not persuasive.

We have considered Krivoi's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

7